1    UNITED STATES DISTRICT COURT
     SOUTHERN DISTRICT OF NEW YORK
2    ------------------------------x

3    UNITED STATES OF AMERICA,

4             v.                              16 Cr. 518 (VM)

5    KUN SHAN CHUN,

6             Defendant .

7    ------------------------------x

8                                    New York, N.Y.
                                     January 20, 2017
9                                    3:15 p.m.

10

     Before:
11
                      HON. VICTOR MARRERO,
12
                                     District Judge
13

14                        APPEARANCES

15   PREET BHARARA
          United States Attorney for the
16        Southern District of New York
     BY:  EMIL BOVE
17        ANDREA L. SURRATT
          Assistant United States Attorney
18
     FEDERAL DEFENDERS OF NEW YORK, INC.
19        Attorneys for Defendant
     BY:  JONATHAN MARVINNY
20
     Also Present:  Special Agent Jason Levitt, FBI,
21

22

23

24

25

1          (Case called)

2          THE COURT:  This is a proceeding in the matter of the

3     United States versus Shan Chun.  It's Docket 16 Cr. 518.

4          Counsel, please enter your appearances for the record.

5          MR. BOVE:  Good afternoon, your Honor.  Emil Bove and

6     Andrea Surratt for the government.  We have here with us

7     Special Agent Jason Levitt from the FBI.

8          THE COURT:  Good afternoon.

9          MR. MARVINNY:  Good afternoon, your Honor.  Federal

10    Defenders of New York by Jonathan Marvinny for Joe Chun.

11         THE COURT:  The Court notes for the record that the

12    defendant is present in the courtroom seated next to his

13    attorney.

14         The Court scheduled this proceeding as the sentencing

15    of the defendant in this matter.  I have read and reviewed the

16    presentence investigation report dated October 21, 2016 which

17    was prepared in connection with today's sentencing of Mr. Chun.

18    I have also read the submissions from the government dated

19    January 6 and January 18, 2017, and the submissions from

20    defense counsel dated January 13, 2017.

21         Mr. Bove, has the government read and reviewed the

22    presentence report?

23         MR. BOVE:  Yes, your Honor.

24         THE COURT:  Does the government have any objections to

25    the report to raise at this point?

 1                    MR. BOVE:  No, your Honor.

 2                    THE COURT:  Thank you.

 3                    Mr. Marvinny, have you read and reviewed the

 4      presentence report?

 5                    MR. MARVINNY:  Yes, your Honor.

 6                    THE COURT:  Have you had an opportunity to discuss it

 7      with Mr. Chun?

 8                    MR. MARVINNY:  I have.

 9                    THE COURT:  Do you have any objections to the report

10      to raise at this point?

11                    MR. MARVINNY:  No, your Honor.

12                    THE COURT:  Thank you.  You may be seated.

13                    Mr. Chun, please rise.  Have you read and reviewed the

14      presentence report?

15                    THE DEFENDANT:  Yes, I have.

16                    THE COURT:  Have you discussed it with your attorney?

17                    THE DEFENDANT:  Yes, I have.

18                    THE COURT:  Thank you.  You may be seated.

19                    On August 1, 2016, Mr. Chun pled guilty pursuant to a

20      plea agreement before Magistrate Judge Francis to Count One of

21      Indictment 16 Cr. 0518 which charged him with acting in the

22      United States as an agent of a foreign government without prior

23      notification to the Attorney General in violation of 18 U.S.C.,

24      Section 951.

25                    The Court accepted the defendant's guilty plea on

1    August 10th, 2016, having found that Mr. Chun entered the

2    guilty plea knowingly and voluntarily and that there was a

3    factual basis for the guilty plea.

4              Mr. Bove, does the government have any additional

5    comments for the Court's consideration before the Court imposes

6    sentence?

7              MR. BOVE:  Your Honor, I'm going to rest principally

8    on our submissions.

9              THE COURT:  All right, thank you.

10             Mr. Marvinny, do you have any additional comments for

11   the Court's consideration?

12             MR. MARVINNY:  I do, your Honor.  Briefly, if that's

13   okay.

14             THE COURT:  Yes.

15             MR. MARVINNY:  May I use the podium, your Honor?

16             THE COURT:  You may.

17             MR. MARVINNY:  Thank you.

18             Your Honor, I just want to begin by saying that

19   Mr. Chun feels profound remorse.  That is not just something

20   that his defense lawyer is telling the Court to make Mr. Chun

21   look good, that is the truth.  The remorse Mr. Chun feels is

22   real and it is deep.  Nothing I said in my submission,

23   certainly nothing I say today, in any way is an attempt to say

24   that Mr. Chun is not responsible for the wrong actions he

25   committed.  He committed crimes, and he's acknowledged that.

He continues to acknowledge that. But what we tried to do in

our submission is contextualize the offense, your Honor,

because as this Court is aware, things are never really black

and white, they're complicated. Mr. Chun is a human being, and

like all of us, similarly complicated.

I've offered the information about Mr. Chun's

motivations to provide the Court with necessary information

about the nature and circumstants of the offense. I'm not

going to belabor the points today, your Honor, I would just

like to say, I think the parties could probably go back and

forth for a long time trying to select aspects of the case that

support their respective arguments, but at the end of the day,

what we have here is an individual who provided information to

a government official that he never should have provided. And

he admits that. But he is not someone who was motivated by

greed, he was not someone who was out to harm the United

States. The truth, your Honor -- and you'll hear from

Mr. Chun -- is that he does love the United States. And we say

that, again, not to make Mr. Chun look good at sentencing, but

because it's the truth.

Your Honor, the truth is that Mr. Chun, over the

course of a decade of the conduct described by the government,

never really received any direct payments, or minimal direct

payments for the information he provided. He was given

benefits in the form of trips that were partially paid for --

1    he certainly enjoyed those trips, never said he didn't -- but

2    Mr. Chun himself never received direct payment, and that's the

3    facts of the case.  And those facts cut against a suggestion

4    that he was motivated solely by greed.

5         Other actions of Mr. Chun show your Honor that he

6    wasn't motivated for that purpose.  We've discussed, and the

7    government has discussed, how Mr. Chun at one point passed an

8    organizational chart about the FBI office.  And as the

9    government agrees, in that instance Mr. Chun took that

10   organizational report, copied it by hand, and deleted the names

11   of the FBI personnel from that report before sending it over to

12   the government official.  That's not the behavior of someone

13   hellbent on harming the United States.  That's not the behavior

14   of someone solely motivated by greed.  Mr. Chun's actions

15   there, and in other instances, support our position that

16   Mr. Chun was primarily motivated by a desire, however

17   misguided, to help his parents.  That was the motivating

18   factor.

19        Your Honor, there's some discussion of the undercover

20   agent that was sent to essentially incriminate Mr. Chun into

21   more serious offenses.  Your Honor, there's a 600-page

22   transcript of the conversations between that undercover and

23   Mr. Chun.  And again, the government can and has selected

24   portions of that transcript to try to make Mr. Chun look worse.

25   The defense can also select portions of that transcript, as we

have, to show that there was much more going on in Mr. Chun's

mind than greed and a desire to hurt the United States.  But

again, Mr. Chun's actions really tell the story.  At the end of

that nearly year-long effort to entice Mr. Chun to commit more

serious offenses, he didn't do it.  He simply did not do it.

There was no additional charge that came out of that nearly

year-long effort to get Mr. Chun to commit more serious

offenses.  That again, your Honor, supports the rationale and

the explanation that we've provided for how Mr. Chun finds

himself in this position.

Your Honor, I'll wrap up by saying, you know, we

talked about what we believe are the most pertinent 3553(a)

sentencing factors in our submission.  I tried to talk about

the nature and circumstances of the offense, talk about how

they are mitigating.

I'll say, as for specific deterrence, your Honor, I

respectfully submit this is not even a close call.  Mr. Chun is

wholly deterred.  He is remorseful, as I said earlier.  He has

sought to make progress since he's been arrested.  He has

sought to do everything that could be asked of someone in his

position.  He is simply no threat whatsoever to ever commit

another offense.

The government has focused on general deterrence, but

as I said in my submission, your Honor, Mr. Chun, he's a

singular human being being sentenced for his specific conduct.

 1    He's not an example, he's not a sacrificial lamb, he is someone

 2    whose sentence should be proportional to the things he did and

 3    the person he is.

 4          But on that score, your Honor, Mr. Chun has already

 5    been very seriously punished for his wrongdoings.  He has, of

 6    course, lost his job with the FBI, he has been publicly shamed

 7    via the media attention in this case, he's a convicted felon,

 8    that felony will stay on his record and with him for the rest

 9    of his life.  Those are serious, serious punishments that this

10    Court should consider, punishments that have already been

11    exacted upon Mr. Chun.  I think it's fair to say the public

12    well understands that his conduct was serious and they've

13    gotten the message, so the Court need not make an example of

14    him here today to develop that message.

15          Your Honor, given Mr. Chun's history and

16    characteristics, the very first offense, he's someone who's got

17    an impressive and admirable back story.  I've tried to provide

18    some detail about that in my submission.  All the factors

19    together show that prison simply isn't necessary here, your

20    Honor.  We've asked you to impose three years of supervised

21    release with one year of home confinement.  That is a

22    significant penalty that has teeth.  It accounts for the

23    seriousness of what Mr. Chun did, but it also accounts for the

24    other mitigating factors in this case and the other 3553(a)

25    factors.

 1          So, your Honor, unless you have specific questions for

 2   me, I'm happy to sit down at this point.

 3          THE COURT:  Thank you.

 4          MR. MARVINNY:  Thank you, your Honor.

 5          THE COURT:  Mr. Chun, please rise.  Is there anything

 6   you would like to say on your own behalf before the Court

 7   imposes sentence?

 8          THE DEFENDANT:  Your Honor, there's no word that I can

 9   say for the wrong things that I have done.  I'm sorry.  I'm

10   sorry.  I'm sorry to the FBI.  I'm sorry.  I take full

11   responsibility for what I have done or the wrong things I have

12   actually done.  I'm sorry.  Your Honor, thank you for the time.

13          THE COURT:  Thank you.

14          In accordance with the decision by the United States

15   Supreme Court in United States versus Booker, while the United

16   States Sentencing Guidelines are not mandatory, the Court

17   nonetheless must consult those guidelines and take them into

18   account at sentencing.  Therefore, the Court has considered the

19   findings of fact stated in the presentence report, as well as

20   the guidelines analysis and the recommendations contained

21   therein.  The Court has weighed this information along with the

22   factors listed in 18 U.S.C., Section 3553(a) in coming to its

23   final sentencing decision in this case.

24          The Court adopts the factual recitation in the

25   presentence investigation report regarding the criminal history

category and offense level but defers to the plea agreement for

the applicable guidelines sentencing range.  Therefore, the

Court finds that under the guidelines, Mr. Chun does not have

an applicable offense level and his criminal history falls into

Category I.  The guidelines range of imprisonment is 21 to 27

months' imprisonment.

        Mr. Chun pled guilty to acting in the United States as

an agent of a foreign government without prior notification to

the Attorney General.  The probation office has recommended

that the Court impose a sentence of 21 months' imprisonment.

The government has also requested that the Court impose a fine

of $95,000.  Subsection (a)(1) of 18 U.S.C., Section 3553

requires that the courts take into consideration the nature and

circumstances of the offense and history and characteristics of

the defendant.  Subsection (a)(2) of 18 U.S.C., Section 3553

requires that the Court consider the need for the sentence to

promote certain objectives of the criminal justice system,

namely, punishment, specific and general deterrence, and

rehabilitation.  Pursuant to Section 3553(a)(6), the Court is

also directed to consider the need to avoid unwarranted

sentencing disparities among defendants with similar records

and similar offenses in other cases, as well as in connection

with the case at hand.

        The sharply contrasting portrait of Mr. Chun that the

parties have presented to this Court in their sentencing

submissions and at the hearing call to mind the long-running
television game show "To Tell the Truth".  In that program, the
real person and two imposters appear at the studio in disguise.
A distinguished panel then questions the contestants about who
they are to determine which of them is telling the truth and,
thus, is the real person.  At the end of the questioning, the
show host asks, "Will the real -- person's name -- please stand
up."

This proceeding poses that question.  It asks the
Court to identify which is the real Kun Shan Chun and impose a
sentence on that person.  So is there a real Mr. Chun here as
well as an imposter?  Regrettably, the fact is that there is
but one Mr. Chun before the Court, the individual who embodied
the Mr. Chun he later became and who got into the trouble that
brought him here today.  It is the later characteristics of
that person on whom the Court calls attention at this time.
This focus is warranted because during the past ten years, this
part of Mr. Chun's life has played the dominant self of his
being and personality.

In making this assessment, the Court has taken into
account several extremely serious aggravated considerations.
First, the circumstances presented here do not entail an
aberration, a one-time deviation from the defendant's otherwise
straight and continuous behavioral pathway, nor was Mr. Chun's
offense a reckless departure of an immature youth.  Mr. Chun,

1    now 46, set out on the criminal course that landed him here

2    today ten years ago, presumably at the prime of his

3    intellectual capacity and maturity.

4         Moreover, the Court is not persuaded to the

5    fact-supported reading that at the time Mr. Chun commenced his

6    criminal career, he was under severe economic or personal

7    hardship that emotionally may have served as a form of coercive

8    force explaining his or mitigating his wrongdoing.  What comes

9    across from the records strongly suggests otherwise.  At all

10   times during the past ten years, Mr. Chun knew what he was

11   doing and that it was very wrong, but he did it, nonetheless,

12   and in a way that suggests not only his full awareness but

13   calculated efforts to conceal his criminal actions.

14        Second, Mr. Chun was employed by the FBI during the

15   time of his crimes.  In this employment context, protecting

16   confidence requires the utmost loyalty and integrity.  For a

17   law enforcement agency such as the FBI, a betrayal of the vital

18   code of trust and confidence perhaps ranks as the occupational

19   equivalent of a most serious treachery.

20        Third, Mr. Chun's conduct entailed not only a betrayal

21   of his oath on duty, of loyalty and confidence in handling

22   sensitive material, but doing so in concert and at the behest

23   of an official of a foreign government.

24        Fourth, the foreign agent at the other end of

25   Mr. Chun's betrayal was a government official, not of the Duchy

1  of Grand Fenwick, but of China, a country which Mr. Chun knows,

2  or should have known, occupies a unique position among world

3  nations, possessing the means and resources, as well as the

4  competitive pressures to threaten the interests and the

5  national interests of the United States.

6          Cumulatively, these considerations weigh heavily in

7  determining an appropriate sentence that unequivocally

8  expresses the seriousness of Mr. Chun's crimes, not only as

9  notice to him but to the rest of the world.

10         Accordingly, while the Court has closely taken into

11  account Mr. Chun's entire personal history and characteristics,

12  full as they are with episodes of commendable and exemplary

13  behavior and sympathetic mitigating circumstances, unbalanced,

14  the Court is not persuaded that a probationary sentence

15  Mr. Chun urges would be appropriate and sufficient, and in fact

16  would properly reflect the objectives of sentencing in this

17  case.

18         Mr. Chun, please rise.

19         Taking into account the nature and circumstances of

20  the offense and the history and characteristics of the

21  defendant and considering all of the factors listed in 18

22  U.S.C., Section 3553(a), the Court finds that a sentence of 24

23  months' imprisonment is appropriate, and that such a term is

24  sufficient but not greater than necessary to promote the proper

25  objectives of sentencing.  Upon your release from imprisonment,

1    you shall be placed on supervised release for a term of one

2    year.  The Court will also impose a fine of $10,000, which

3    shall be paid commencing upon your release from imprisonment in

4    equal monthly installments during the time of five years.

5    You're also ordered to pay to the United States a special

6    assessment of $100, which shall be due immediately.

7            Mr. Bove, is there a forfeiture in this case?

8            MR. BOVE:  No, your Honor.

9            THE COURT:  Mr. Chun, you must comply with the

10    standard conditions 1 through 13 of supervised release and the

11    following mandatory conditions:

12            You shall not commit another federal, state, or local

13    crime.  You shall not legally possess a controlled substance.

14    You shall not possess a firearm or destructive device.  The

15    mandatory drug testing condition is suspended based on the

16    Court's determination that you pose a low risk the future

17    substance abuse, and you shall cooperate in the collection of

18    DNA as directed by the probation officer.

19            In addition, you shall obey the following special

20    conditions:

21            You shall provide the probation officer with access to

22    any and all requested financial information.  You shall submit

23    your person, residence, place of business, vehicle, and any

24    other property or electronic devices under your control to

25    search on the basis that the probation officer has reasonable

1    suspicion that contraband or evidence of a violation of the

2    conditions of release may be found.  The search must be

3    conducted at a reasonable time and in a reasonable manner.

4    Failure to submit to search may be grounds for revocation.  You

5    shall inform any other residents that the premises may be

6    subject to search pursuant to this condition.

7              Mr. Chun, do you understand each of these conditions?

8              THE DEFENDANT:  Yes, your Honor.

9              THE COURT:  You shall report to the nearest probation

10   office within 72 hours of release.  The Court recommends that

11   you be supervised by the district of residence.  The sentence

12   as stated is imposed.

13             Mr. Chun, to the extent that you have a right to

14   appeal your sentence and you're unable to pay the costs of an

15   appeal, you have the right to apply for leave to appeal in

16   forma pauperis, meaning as a poor person.  If you make such a

17   request, the clerk of court must immediately prepare and file

18   an order of appeal on your behalf.

19             Do you understand your right to appeal, to the extent

20   that it may exist?

21             THE DEFENDANT:  Yes, your Honor.

22             THE COURT:  Mr. Bove, are there any remaining counts

23   or underlying indictments that need to be dismissed at this

24   time?

25             MR. BOVE:  No, your Honor.

 1          THE COURT:  Mr. Marvinny, do you have a proposal with

 2    regards Mr. Chun's surrender?

 3          MR. MARVINNY:  Yes, your Honor.  We would respectfully

 4    request that your Honor fix a date two months from today so

 5    that Mr. Chun might voluntarily surrender.

 6          THE COURT:  Mr. Bove, does the government have any

 7    view on that?

 8          MR. BOVE:  Your Honor, I don't object to the request

 9    for 60 days for the surrender, but I do have an application to

10    modify the terms of the defendant's release pending that

11    surrender in light of the changed circumstances arising from

12    today's sentence, as well as the defendant's substantial

13    connections in China, and in addition, his statement to the

14    undercover employee in July of 2015 that the Chinese government

15    would be willing to provide immigration benefits to people who

16    assist them.

17          In light of all those considerations, we would ask

18    that the terms of his release be modified to reinstate the

19    condition of home incarceration pending his surrender in 60

20    days.

21          THE COURT:  Mr. Marvinny.

22          MR. MARVINNY:  One moment, please, your Honor.  Your

23    Honor, I don't think that change is necessary.  Mr. Chun is

24    still currently on electronic monitoring.  He has been since

25    the inception of this case.  He, I think, is just on a

1    condition of home confinement, which is just a slightly lower

2    restriction that allows him to work.  He has a curfew right

3    now, your Honor, that's been in place.  He's been fully

4    compliant, so he's been very closely monitored.  I'd just like

5    him to have the opportunity to continue, for the remaining two

6    months he has, to be able to earn a little bit of money to help

7    provide for his family, to help start paying the fine.

8            He's been fully compliant, and your Honor, quite

9    frankly, Mr. Chun and I have had many discussions about the

10   possibility of incarceration here, and Mr. Chun was prepared

11   for it, has accepted it, and is not a flight risk in the least,

12   your Honor.  He's really not.

13           THE COURT:  All right, thank you.

14           In light of the fact that Mr. Chun is already subject

15   to monitoring and home detention, I will deny the request for

16   any further changes.  I will direct, however, that the

17   probation office continue strict supervision of Mr. Chun.

18           Let's look for a date 60 days out for self-surrender.

19           THE DEPUTY CLERK:  How about Monday, March 20th?

20           MR. MARVINNY:  That's fine.  Thank you.

21           THE COURT:  Mr. Chun, you are directed to surrender to

22   the facility designated by the United States Bureau of Prisons

23   by noon on March 20 of 2017.  If no facility has been

24   designated by that date, you are directed to surrender to the

25   United States Marshal for this district.

1            Do you understand that your failure to do so may

2    subject you to prosecution for an offense separate and apart

3    from that which you've been sentenced here today?

4            THE DEFENDANT:  Yes, your Honor.

5            THE COURT:  All right, thank you.

6            If there's nothing else, I thank you, and have a

7    good day and a good weekend.

8            MR. BOVE:  Thank you, your Honor.

9            (Adjourned)

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25